THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF DEREK A. THOMAS, Tonya | : | NO. 2:14-CV-00551-MRH |
| Leigh Thomas, Administratrix, | : | |
| Plaintiff | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | |
| | : | JUDGE MARK R. HORNAK |
| FAYETTE COUNTY, BRIAN MILLER, | : | |
| Individually & as Warden of the Fayette | : | |
| County Prison, PRIMECARE MEDICAL, INC.; | : | ELECTRONICALLY FILED |
| JOSEPH BARNES, SC, Individually & | : | |
| as an Employee; TAMMIE POPIESH, SC, | : | |
| Individually & as an Employee; and | : | |
| SHANNON R. DeLORENZO, Individually & | : | JURY TRIAL DEMANDED |
| as an Employee of PrimeCare Medical, Inc.; | : | |
| Defendants | : | |

**DEFENDANT PRIMECARE MEDICAL, INC. AND SHANNON R. DeLORENZO'S
BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

### I.  HISTORY OF THE CASE

This matter arises from the suicide of Derek A. Thomas at the Fayette County Prison (hereinafter "the Prison").  (See, Docs. 1 and 33)  PrimeCare has a contract with Fayette County to provide medical services to inmates incarcerated in the Fayette County Prison.  Shannon DeLorenzo is a licensed practical nurse who is employed by PrimeCare and who performs nursing duties at the Prison.

On December 21, 2013, Mr. Thomas was committed to the Prison.  (See, Exhibit A[1] to Medical Defendants' Statement of Undisputed Facts.)  As part of his initial commitment to the Prison, he underwent a suicide screening by Corrections Officer Joseph Barnes at approximately 8:25 a.m. (See, Exhibit A.)  Mr. Thomas indicated to Officer Barnes that there was a family member who had attempted suicide in the past,

---

[1] All Exhibits referenced herein are attached to the Statement of Undisputed Facts filed by Defendants PrimeCare Medical, Inc. and Shannon DeLorenzo in support of their Motion for Summary Judgment.

that he had a mental health treatment history, and he had a history of drug and alcohol abuse. (See, Exhibit A.)  Mr. Thomas did not appear to be under the influence of alcohol or drugs nor did Mr. Thomas appear to be withdrawing from alcohol or drugs.  Mr. Thomas did not require suicide precautions as a result of the screen.  (See, Exhibit A.)

Mr. Thomas also underwent an Intake Suicide Screening by Nurse DeLorenzo at approximately 6:45 p.m.  The screening device requires the inmate to be asked a series of questions.  Answers to the questions are given a score.  If the score is 8 or more, the inmate is placed upon a suicide watch.  (See, Exhibit B.)  A screening process, which is done by both medical and correctional staff, is recommended by the National Commission on Correctional Health Care, and meets the applicable standard of care (See, Exhibits C and D.)  Mr. Thomas scored a 3 on the suicide screen.  (See, Exhibit B.)  Mr. Thomas also specifically denied that he was thinking about killing himself, that he had prior suicide attempts, or that he had nothing to look forward to in the future. (See, Exhibit B.)  Mr. Thomas also did not appear to be under the influence of alcohol or drugs, nor was he showing signs of withdrawal or mental illness.  (See, Exhibit B.)

Mr. Thomas was evaluated medically by Nurse DeLorenzo during the intake as well.  Mr. Thomas was alert and oriented.  (See, Exhibit E and F.)  Mr. Thomas gave a history of heroin use.  (See, Exhibit B.)  As a result, Mr. Thomas was given a urine dip test to see if he had any illicit drugs in his system. (See, Exhibits B and G, p. 37, lines 1-10.)  When advised that his drug screens were negative, Mr. Thomas informed Nurse DeLorenzo that he shot up cocaine.  (Exhibit G, p. 56, lines 10 through p. 57, line 5.)  Cocaine withdrawal does not require specific medical intervention, and there is no

generally recognized detoxification protocol for cocaine.  (See, Exhibit H, p. 8.)  Thus, Mr. Thomas was cleared for general population.  (See, Exhibit E.)

At no point did Mr. Thomas ever indicate to any medical staff that he was suicidal.  At no point did Mr. Thomas ever indicate to security staff that he was suicidal. The policies and procedures for intake and suicide prevention met national standards and guidelines.  (See, Exhibits C, D, and H.)

The correctional officer housing logs documented that visual checks by officers were done in the area of where Mr. Thomas was housed frequently and randomly. (See, Exhibit D, p. 4.)

Mr. Thomas reportedly made a comment to an inmate Charles Bittner that "wouldn't it be funny if I just killed myself." (See, Exhibit I, p. 26, lines 13-16; Exhibit C, p. 5.)  Bittner testified during this deposition that such comments were common and generally not taken seriously.  He did not mention Mr. Thomas' comment to either security or medical staff.  (See, Exhibit C, p. 5 and Exhibit I, p. 26.)

Mr. Thomas was found hanging at approximately 6 p.m. on December 22, 2013 (See, Exhibit D, p. 5.)

Plaintiff has not produced any expert evidence in this case.  The only experts who have provided reports are Dr. Althouse, Dr. Guzzardi, and Nurse Fillman, who all opine that the standard of care was met by Nurse DeLorenzo and PrimeCare.  Plaintiff has not produced any evidence that PrimeCare's policies and procedures were in any way deficient.  The only expert evidence produced in this case reveals that PrimeCare's

policies and procedures all met national standards and that the medical personnel

followed those policies and procedures.

## II. ISSUES

A.  SHOULD THIS HONORABLE COURT ENTER SUMMARY JUDGMENT IN FAVOR OF PRIMECARE AND NURSE DELORENZO WHERE PLAINTIFF CANNOT DEMONSTRATE A VIOLATION OF MR. THOMAS' CONSTITUTIONAL RIGHTS?

    Suggested Answer:  Yes

B.  SHOULD THIS HONORABLE COURT ENTER SUMMARY JUDGMENT IN FAVOR OF PRIMECARE AND NURSE DELORENZO WHERE PLAINTIFF CANNOT DEMONSTRATE A VIOLATION OF THE STANDARD OF CARE?

    Suggested Answer:  Yes

## III.  ARGUMENT

Fed. R. Civ. P. 56 governs motions for summary judgment, and section (c) of the

Rule states in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.

> The United States Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986).

There is an issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 993 (1986), L.Ed.2d 176 (1986). A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment. <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995).

> **A. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF PRIMECARE AND NURSE DELORENZO BECAUSE PLAINTIFF CANNOT DEMONSTRATE A VIOLATION OF MR. THOMAS 14TH AMENDMENT RIGHTS**

Plaintiff has asserted that PrimeCare and Nurse DeLorenzo have violated Mr. Thomas' 14th Amendment Rights. It is submitted that that for the reasons that follow, Plaintiff has failed to produce evidence of a viable cause of action.

> **1. Plaintiff cannot demonstrate a reckless indifference to a particular risk of suicide.**

The Third Circuit has recognized that the suicide of a pretrial detainee can support a recovery in a 42 U.S.C. § 1983 action. <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1023-25 (3d Cir. 1991). <u>See also</u> <u>Williams v. W. Chester</u>, 891 F.3d 458 (3d Cir. 1989); <u>Freedman v. City of Allentown</u>, 853 F.2d 1111 (3d Cir. 1988). The standard of liability to be applied in this circuit in prison suicide cases is that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." <u>Colburn</u>, 946 F.2d at 1023 (internal citations omitted).

A plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability.  Colburn, 946 F.2d 1017.

Reckless or deliberate indifference is articulated in Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976).  Estelle involved Eighth Amendment claims alleging inadequate medical treatment.  The Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners."  Id. at 104, 50 L. Ed. 2d 251, 97 S. Ct. 285.  The standard enunciated in Estelle "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical needs . . . be serious." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

A serious medical need, as developed in Estelle, has two components.  The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.  Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Id. at 347 (internal citations omitted).

In Colburn v. Upper Darby Twp., 838 F.2d 663, 664 (3d Cir. 1988), the Third Circuit recognized that "particular vulnerability to suicide" represents a "serious medical

need."  However, the Third Circuit has recognized that neither the due process clause nor the Eighth Amendment imposes liability for a negligent failure to protect a detainee from self-inflicted injury.  United States v. Marszalkowski, 669 F.2d 655 (3d Cir. 1982)  A higher level of culpability, one involving "reckless or deliberate indifference," is required. See also Colburn, 946 F.2d at 1023-25.  Therefore, it is clear that a level of culpability higher than a negligent failure to protect from self-inflicted harm is required.  Id. at 1024.

The requirement of a "particular vulnerability to suicide" speaks to the degree of risk inherent in the detainee's condition.  Id.  The requirement of "reckless or deliberate indifference" implies that there must be "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."  Id. (internal citations omitted).  Even where a strong likelihood of suicide exists, it must be shown that the custodial officials "knew or should have known" of that strong likelihood.  Id.  There can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.  Id.

It is well settled that when "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson . . . the law requires that expert medical testimony be employed."  Redland Soccer Club v. Dep't of the Army, 55 F.3d 827, 852 (3d Cir. 1995) (quoting Gradel v. Inouye, 491 Pa. 534, 421 A.2d 674, 679 (1980)) (internal quotation omitted); see also Bushman v. Halm, 798 F.2d 651, 659 (3d Cir. 1986) ("If the question of causal relation is so esoteric that lay minds cannot form any intelligent judgment about it without expert aid an opinion from an expert may be required.").  This is certainly the case where the Plaintiff's decedent

chose to commit suicide.   It is submitted that Plaintiff needed to produce expert testimony to support any of causes of action in this case, and she failed to do so.   Thus, the only expert evidence in this case has been provided by PrimeCare and Nurse DeLorenzo, and said evidence is undisputed.

In the present matter, the only evidence as to whether Mr. Thomas had a particular vulnerability to suicide was contained in the expert report of Dr. Althouse.   Dr. Althouse opined, "In short, [Thomas] did not present as an imminent or even likely suicide risk."   (Exhibit C [to Statement of Undisputed Facts], p. 6).   Thus, Plaintiff cannot demonstrate a viable cause of action in this case, because she cannot demonstrate Mr. Thomas had a particular vulnerability to suicide.

It goes without saying that Nurse DeLorenzo did not know of Mr. Thomas having a particular vulnerability to suicide where there was no such vulnerability.   However, even if there is a finding of a particular vulnerability, Nurse DeLorenzo was not aware of the vulnerability.   Mr. Thomas denied being suicidal to her as well as the intake correctional officer.   The suicide screens which were performed did not reveal a particular vulnerability.   At no time did Mr. Thomas indicate that he was suicidal and at no time did an inmate alert Nurse DeLorenzo or any other medical staff that Mr. Thomas may be suicidal.   Thus, Plaintiff cannot demonstrate the second element necessary to prove a claim of alleged violation of constitutional rights.

Finally, Plaintiff cannot demonstrate a deliberate or reckless indifference in this case.   Nurse DeLorenzo performed both a suicide screen and a medical intake which conformed to national standards.   In her judgment, there was nothing about those

screenings which would warrant placing Mr. Thomas on a suicide watch.  To the contrary, based upon the information on the screenings, placing Mr. Thomas on suicide precautions would be a violation of PrimeCare policy.  (Exhibit C, p. 8).  Thus, the record reveals that Nurse DeLorenzo completed the nationally approved screening tools and utilized her best judgment.  One cannot be found to be deliberately indifferent under such a scenario.  Therefore, Plaintiff also cannot prove the third required element of her cause of action.

This is a tragic case, because Mr. Thomas chose to commit suicide.  However, the undisputed evidence which has been developed in this case is that:  Mr. Thomas did not have a particular vulnerability to suicide; no prison personnel had had any knowledge nor should they have any knowledge of a particular vulnerability to suicide; and finally, there was no reckless indifference by any medical personnel.  Therefore, it is respectfully requested that this Honorable Court grant the Motion for Summary Judgment of PrimeCare and Nurse DeLorenzo.

> **2.    Summary judgment should be granted in favor of PrimeCare since Plaintiff does not have evidence to support deliberate indifference in a policy or procedure.**

Plaintiff has also failed to demonstrate that a policy or procedure of PrimeCare resulted in deliberate indifference to Mr. Thomas' alleged risk or vulnerability to suicide. Municipalities and private corporations that contract with the state to provide services cannot be subjected to liability under § 1983 on the basis of *respondeat superior*.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); *see also*, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (holding that a municipality

cannot be liable under § 1983 on a theory of *respondeat superior*).  Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom.  Natale, 318 F.3d at 583-84; see also Bd. of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997); Griggs v. Dauphin County Prison, No. 1:06-0823; 2008 WL 2518090, at *4 (M.D. Pa. June 19, 2008); Miller v. City of Phila., Civil Action No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827, at *4 (E.D. Pa. Nov. 21, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).  A local government entity may be held liable under § 1983 only when the plaintiff demonstrates that the government entity itself caused the plaintiff's injury through the implementation of a policy or custom.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A policy is an official proclamation or edict of a municipality while a custom is a practice that is so permanent and well settled as to virtually constitute law.  Beck v. City of Pitt., 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted). The plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation."  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  It must be the policymaker's actions that "directly

caused constitutional harm."  <u>Gottlieb v. Laurel Highlands Sch. Dist.</u>, 272 F.3d 168, 175 (3d Cir. 2001).

As stated above, the only evidence concerning policies and procedures in this record was produced by PrimeCare and Nurse DeLorenzo.  The undisputed evidence is that the policies and procedures in place at the Fayette County Prison conformed to national standards and the applicable standard of care.  The policies in place insured that Mr. Thomas was screened twice at intake for suicide risk.  Neither of these screens revealed a suicide risk.  Mr. Thomas was also evaluated medically.  There was nothing about his medical evaluation which revealed a potential risk for suicide.  Further, Mr. Thomas had unfettered access to care if he chose to avail himself of the medical staff at the prison.  Simply stated, the policies and procedures at the Fayette County Prison all met the standard of care, and no policy could have prevented Mr. Thomas from choosing to take his life.  Therefore, it is respectfully requested that summary judgment be entered in favor of PrimeCare.

**B.    PLAINTIFF CANNOT PROVE A CAUSE OF ACTION FOR NEGLIGENCE WITHOUT EXPERT TESTIMONY.**

Plaintiff has asserted a claim for wrongful death and survival against PrimeCare in Counts VII and VIII of her Amended Complaint, and Plaintiff has asserted a claim for wrongful death and survival against Nurse DeLorenzo in Counts VII and VIII of her Amended Complaint.  It is not clear if these Counts are premised upon the alleged violation of Mr. Thomas' constitutional rights or a separate cause of action for professional malpractice.  As stated above, Plaintiff cannot demonstrate a violation of Mr. Thomas' constitutional rights.

Concerning any claim for professional malpractice, to prove a cause of action for malpractice, a plaintiff must establish that the defendant owed a duty the patient, that the medical professional breached that duty, that the breach of duty was the cause of, or a substantial factor in, bringing about the harm suffered by the patient, and that the patient's damages directly resulted from the harm.  Eaddy v. Hamathy, 694 A.2d 639, 642 (Pa. Super. Ct. 1997).   The malpractice plaintiff must also present an expert witness to testify "to a reasonable degree of medical certainty, that the acts of the [medical provider] deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered."   Eaddy, 694 A.2d at 642 (citing Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990)) (internal quotations omitted); Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070-71 (Pa. 2006).

Plaintiff has failed to produce any expert evidence in support of her claims in this case.   Plaintiff cannot demonstrate a violation of the standard of care or causation without expert testimony.   Simply stated, Plaintiff cannot prove a malpractice case without an expert.   Therefore, it is respectfully requested that this Court enter summary judgment in favor of PrimeCare and Nurse DeLorenzo.

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER

By:     s/John R. Ninosky
        John R. Ninosky, Esquire
        Attorney I.D. No. 78000
        301 Market Street ~P. O. Box 109
        Lemoyne, PA  17043-0109
        Telephone (717) 761-4540
        Email:  jrn@jdsw.com
        Attorney for Defendants PrimeCare Medical, Inc.
Date:   September 14, 2015        and Shannon R. DeLorenzo

12

## CERTIFICATE OF SERVICE

I hereby certify on the 14th day of September, 2015, that the foregoing *Brief in Support of Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Herbert A. Terrell, Esquire
201 Liberty Street
McDonald, PA  15057
hat@terrelllegal.com
*Counsel for Plaintiff*

Marie Milie Jones, Esquire
Michael R. Lettrich, Esquire
JonesPassodelis, PLLC
Gulf Tower, Suite 3510
707 Grant Street
Pittsburgh, PA  15219
mjones@jonespassodelis.com
mlettrich@jonespassodelis.com
*Counsel for County Defendants*

JOHNSON, DUFFIE, STEWART & WEIDNER

By:    s/John R. Ninosky
       John R. Ninosky